

FILED & ENTERED

JUL 12 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

In re:

Arna Susan Vodenos

Debtor(s).

Case No.: 1:10-bk-25103-GM

CHAPTER 11

**MEMORANDUM OF OPINION DENYING MOTION FOR ORDER TO SHOW CAUSE RE: CONTEMPT  (Dkt. 636)**

Date:   July 12, 2016
Time:   10:00 a.m.
Courtroom: 303

On December 1, 2010 Arna Vodenos filed this Chapter 11 bankruptcy case and on January 14, 2014 she confirmed her Plan of Reorganization.  Youval Ziv was not listed on the creditor matrix or given notice of the actual filing of the bankruptcy, although he was aware that Vodenos intended to file so as to strip two junior liens from a piece of real property in which he resided and in which he claimed a contractual interest.  On March 28, 2014 Vodenos filed a state court eviction action against Ziv, which eventually resulted in a judgment in favor of Vodenos for restitution and money. Ziv vacated the premises in January 2015. (LASC 14R03293).

While the eviction action was pending, on October 3, 2014 Ziv filed a complaint against Jason Vogel, Vodenos' husband. [This complaint against Vogel for defamation and interference with contract (LASC BC566592) is not directly a part of this contempt motion.] Two months later, Ziv filed a complaint against Vodenos asserting causes of action for breach of oral joint venture agreement, breach of fiduciary duty, promissory fraud, specific performance, declaratory relief, quiet title, and unjust enrichment. (LASC BC599813, referred to herein as "the quiet title suit" or "the lis pendens suit").

On February 6, 2015, Ziv filed his second complaint against Vodenos, asserting causes of action for trespass to land, invasion of privacy, breach of implied covenant of quiet enjoyment, illegal lockout, violation of business and professions code section 17200, and intentional infliction of emotional distress. (LASC BC571640, referred to herein as "the trespass suit").

On February 26, 2015, Vodenos filed claim #47 on behalf of Ziv for a total of $3.2 million, attaching thereto Ziv's complaint in the quiet title suit. Immediately thereafter, on February 27, 2015 Ziv filed two claims: claim #48 for $300,000 (to which he attached the state court trespass suit complaint) and claim #49 for $3 million (to which he attached the state court quiet title suit complaint.) [1]

Although the state court matters were progressing, on May 12, 2015 this court granted Vodenos summary judgment as to claim #49, except concerning that portion of the claim asserting unjust enrichment. The order was entered on July 2, 2015. [2] On October 6, 2015 the court estimated claim #48 at $0. On November 2, 2015, the court estimated the unjust enrichment portion of claim #49 at $0.

---

[1] The actual rulings and details of these matters are much more complex than this brief summary. They are laid out in the table filed concurrently herewith.

[2] Claims #47 and #49 are virtually identical. On 5/12/15, the Court ruled that claim #49 was deemed to amend claim #47. Thus only claim #49 will be referred to except as needed to specify the actual filing of claim #47.

On November 3, 2015, reorganized debtor Arna Vodenos filed a motion for an order to show cause re: contempt against Youval Ziv and Alejandro Herrera, his attorney (dkt. 636).[3] The motion for the OSC asserts that even after this court resolved claims #48 and #49, Ziv and Herrera have "continued to take action to collaterally attack the Confirmation Order, Plan and Orders on claims 48 and 49 by suing Vodenos in the Los Angeles Superior Court in both the Trespass suit and the Lis Pendens suit. . . . [T]he collateral attack on and refusal to act in accordance with the Plan and Order is contemptuous.  Furthermore, their second bite of the apple is collaterally estopped." (dkt. 636).

Vodenos cites the case of *In re Wilshire Courtyard,* 437 B.R. 380 (Bankr. C.D. Cal. 2010), in which the court, using its inherent powers under §105, issued an order to show cause why the FTB should not be held in contempt for collaterally attacking and refusing to comply with the plan confirmation order.  Vodenos argues that here, as in *Wilshire Courtyard,* Ziv and Herrera are collaterally attacking Vodenos' confirmed plan by continuing to pursue the identical claims in the state court action.  For these reasons, "this Court should grant movants' relief seeking a remedy for Ziv and Herrera's violation fo [sic] the Confirmation Order, Plan and Orders on claims 48 and 49.  Ziv and Herrera must show cause as to why its [sic] post-confirmation actions is [sic] not in contempt of such Orders."  Dkt. 636, pg. 4.

No documents were attached to the original motion; however two days later Jeff Katofsky, one of the attorneys representing Vodenos, filed his declaration.  The crux of the issue, as asserted by Katofsky is as follows:

    4.  Rather than handle these matters exclusively within the jurisdiction of

---

[3] Unless otherwise specified, docket numbers refer to case 10-bk-25103.  The terms "dkt" and "doc" are used interchangeably.

this Court, as they must, Ziv and Herrera continued to litigate these identical matters in both forums simultaneously. As this Court is well aware, these two claims were fully litigated in this Court, resulting in a summary judgment on Claim 48 and, on Claim 49, a summary judgment on 6 of the 7 causes of action with the final cause of action for unjust enrichment being estimating [sic] at zero following an evidentiary hearing. Of course, as the Court is aware, no competent evidence was submitted at the evidentiary hearing and the Creditor did not deem it important enough to appear.

5. Litigating the Trespass case and the Lis Pendens case in the Los Angeles Superior Court simultaneously was not only unnecessary and contrary to this Court's various Orders, but also extremely expensive for the Debtor. Ziv and Herrera, despite more than a half dozen demands by me to dismiss, continue to litigate both cases in the Superior Court to this day. Ziv's amended complaint was due on November 3 in the Lis Pendens case and he refused, so far, to remove the lis pendens on the Vulcan property by November 3 despite being ordered to do so by [Superior Court] Judge Shaller. A motion to dismiss, brought by Debtor, is presently pending in the Trespass case, scheduled for December 3.

(dkt. 642). Katofsky attached his bills to his declaration, seeking $28,342 for the total fees and costs incurred by the Debtor since the claims were filed.

Ziv[4] filed an opposition on procedural grounds (dkt. 646).

The initial hearing on the contempt motion was set for December 1, 2015, for which the Court issued the following tentative ruling:[5]

*This is part of a long-running dispute with Youval Ziv concerning rights to an interest in property that the Debtor owns at 7930 Vulcan Dr. There was an action in the Superior Court and Ziv also filed two claims (claims 48 and 49) in this case. Each claim is identical to one of the LASC lawsuits (BC559813 - lis pendens in which Ziv claimed a right to purchase) and (BC571640 - for trespass). As to claim 48 (trespass), this Court granted summary judgment and denied the claim in full. As to claim 49 (an interest in the real property), this Court granted summary judgment to the Debtor on all assertions except that it ruled that the*

---

[4] Although Herrera actually did the filings, etc. that are complained of, in doing so he acted as counsel for Ziv. Thus, unless it is otherwise clear from the context, all references to Ziv are also meant to include Herrera's actions as Ziv's attorney.

[5] All tentative rulings are set forth in italics. Typographical errors have been corrected.

*cause of action for unjust enrichment was to be estimated.  At the hearing on estimation, the Court estimated the claim at $0.*

*The Debtor seeks an order that Ziv and his attorney should show cause why they are not in contempt for violation of the Confirmation Order, Plan, and orders on claims #48 and #49.  The motion also sets forth possible damages in the amount of fees that counsel for the Debtor has incurred in defending the state court actions from the time that the claims were filed in the bankruptcy court.*

*Opposition*

*Mr. Herrera, on behalf of himself and Mr. Ziv, opposes strictly on procedural grounds:*

*(1) the respondent is entitled to 7 days to respond and the motion says that he has 5 days;*

*(2) no proposed order was lodged and served with the motion in violation of LBR 9020-1(a);*

*(3) the motion does not comply with LBR 9020-1(c);*

*(4) there was no personal service since Ziv is a third party creditor and a citizen of Israel and has never submitted to the jurisdiction of this court and his attorney also has not submitted either.*

*Supplemental papers filed by movant*

*The Ziv/Herrera opposition was filed and served on Nov. 9 and on Nov. 17 counsel for the movant filed a declaration updating the information concerning the state court action and his fees.  He states that it was unnecessary to continue to litigate the state court matters simultaneously with the actions in the*

*bankruptcy court and that this was extremely expensive to the Debtor.  The Debtor made half a dozen demands on Ziv to cease litigating the state court action, but he has ignored them.  On November 3, Ziv filed an amended complaint in the state court lis pendens action.  Debtor has filed a motion to dismiss the trespass action, which is scheduled for hearing in the state court on December 3.*

*Counsel notes that monetary sanctions against Ziv will be ineffective since he has hidden assets and has not paid sanctions ordered by Judge Shaller and the Debtor has a six figure judgment against him.  Mr. Katofsky states that he has billed $28,342 to the Debtor to handle this state court matter from February 27, 2015 until the date of this declaration.  The Debtor seeks reimbursement of this amount from Ziv and Herrera.*

*On November 20, counsel for Debtor filed a request for judicial notice of the Ziv motion for leave to amend and file a second amended complaint in state court case BC559813, which was filed on 11/9/15 and set for hearing on March 4, 2016.  The First Amended Complaint (see doc. #647) dealt with title and named only Vodenos.  The proposed Second Amended Complaint (see doc. #651) adds Vodenos' husband Jason Vogel as a defendant and includes causes of action for misrepresentation, fraud, etc.  He is now claiming conspiracy between Vodenos and her husband.*

<u>Analysis</u>

*Before getting to the meat of the motion, the Court must deal with the procedural issues raised by Mr. Herrera.*

*As to jurisdiction, Mr. Ziv has clearly submitted to the jurisdiction of this*

*court concerning anything to do with this case.  He filed three* [sic] *proofs of*

*claim.  The Ninth Circuit has made it very clear that a creditor not only submits to*

*the jurisdiction of the bankruptcy court when it files a proof of claim, but also*

*loses the right to proceed in another court to seek to collect on that claim.*

*H.K. & Shanghai Banking Corp. v. Simon (in Re Simon), 153 F.3d 991, 997 (9th*

*Cir. Cal. 1998):*

> *When a creditor submits to bankruptcy court jurisdiction by filing a proof of*
> *claim in order to collect all or a portion of a debt, it assumes certain risks.*
> *For example, the creditor loses the right to a jury trial on any counter-*
> *claims filed by the debtor or the trustee. See Langenkamp, 498 U.S. at 44-*
> *45. In addition, the creditor loses previously-held rights to assert "legal*
> *claims" against the debtor and his estate; bankruptcy "converts the*
> *creditor's legal claim into an equitable claim to a pro rata share of the res."*
> *Katchen, 382 U.S. at 336. By acceding to bankruptcy court jurisdiction so*
> *that it might recover a portion of the money it was owed, Hong Kong-*
> *Shanghai forfeited any right it had to claim that the court lacked the power*
> *to enjoin Hong Kong-Shanghai from commencing a post-bankruptcy*
> *collection proceeding against the debtor. Clearly, Hong Kong-Shanghai's*
> *participation in the bankruptcy subjected it to the court's discharge order*
> *pursuant to 11 U.S.C. § 524. A sanction for violating that order is not an*
> *improper extraterritorial application of United States laws.*

*As Judge Tighe summarized in In re Kasl, 2009 Bankr. LEXIS 2351*

*(Bankr. C.D. Cal. Jan. 13, 2009):*

> *In a bankruptcy case where the debtor voluntarily files a petition, the*
> *debtor submits to personal jurisdiction of the court sitting in the district in*
> *which he filed. Similarly, a creditor who files a claim in a bankruptcy case*
> *commenced under the Bankruptcy Code pursuant to 11 U.S.C. § 501*
> *submits to the general jurisdiction of the bankruptcy court presiding over*
> *the bankruptcy case and subjects itself to that court's equitable power.*
> *See Samuel L. Bufford, et al., International Insolvency 15 (Federal Judicial*
> *Center 2001)[hereinafter Bufford]; Langenkamp v. Culp, 498 U.S. 42, 44,*
> *111 S. Ct. 330, 112 L. Ed. 2d 343 (1990). This applies to both domestic*
> *and foreign creditors who file claims. By filing a proof of claim, a creditor*
> *grants the bankruptcy court power to enforce its orders against the*
> *creditor with respect to assets of the debtor or estate both within and*
> *outside of the territorial jurisdiction of the United States. When a creditor*
> *files its claims, it "assumes certain risks" and forfeits certain legal claims.*
> *Simon, 153 F.3d at 997. One type of claim a creditor who submits to*
> *jurisdiction of the bankruptcy court forfeits is the right to "claim the court*

*lacks power to enjoin … post-bankruptcy collection proceedings against the debtor." Id. Furthermore, since bankruptcy converts legal claims into an equitable claim to a pro rata share of the estate, a creditor who files a claim assumes the risk that it will not be able to collect the full amount of its claim. Id. (quoting* <u>Katchen v. Landy</u>*, 382 U.S. 323, 336, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)).*

*Since Ziv is subject to the personal jurisdiction of the Court, personal service is not required.  However, Ziv was not served by mail.  The only service was on Alex H. Herrera at his law office.  Mr. Herrera had not appeared as the attorney for Ziv in this contempt matter.  The proofs of claim filed by Ziv use two addresses.  One is the office of Mr. Herrera, but the other is in care of Pacific Holdings, 6300 Wilshire Blvd., Suite 970, Los Angeles, CA 90048. (see claim #47).  Service by mail for a matter under Fed.R.Bank.P. can be made by first class mail "to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." Fed.R.Bank.P. 9020, 9014(b), and 7004(b)(1).*

*As to Ziv, this matter must be continued so that proper mail service can be made.*

*As to Mr. Herrera, certainly a Court has personal jurisdiction over an attorney who is admitted to practice before that court and is actually appearing in the case.  As noted above, since the Court has personal jurisdiction, service by mail is acceptable.  The motion was served on Herrera at his correct address through electronic means.  Thus service is complete as to Herrera.*

*As to the other technical issues, the requirement of a proposed order being filed with the motion [LBR 9020-1(a)] is modified by the term "unless otherwise ordered by the court."  In this case the Court instructed the movant*

*what to serve, how, and when.*

*Concerning the requirements of LBR 9020-1(c), since there is no proposed order, it is not completely clear what the movant is seeking as to sanctions. The motion itself is clear as to the alleged contemptuous conduct and the supplemental declaration of Mr. Katofsky (doc. #649) definitely states that the sanctions would be the fees incurred (time records and explanation is attached). But he also says that monetary sanctions will not suffice as to Ziv. So it would be an exercise in futility to order them and will not accomplish his purpose of ending the state court matters. However, at this time I deem that movant is simply looking to reimbursement of fees incurred and no other remedy or coercion. If she seeks more, she needs to file a complete proposed order detailing that.*

*This matter must be continued for proper service on Mr. Ziv. The movant is to prepare a proposed order so that it is very clear what remedies she seeks. At the hearing on December 1, we will set the dates for the hearing and for the written explanation by Ziv and Herrera to be filed and served. I plan to hold the hearing on either December 15 or December 22 since, in actuality, the opponents will have had plenty of time to have notice of this.*

*Getting down to the guts of the matter – the issue here is that Mr. Ziv will not let go of his claims even though this Court has determined them. He persists in prosecuting the state court action in which Mr. Herrera is his counsel. And he has even "upped the ante" by now seeking to proceed against Debtor's husband. [The Court also questions why that motion was set for March 2016 and not at a more immediate date. It could be that this type of delay is standard in the state court, but it also could be that Ziv and Herrera are seeking to keep this dispute*

*alive as long as possible.]*

*Although he has appealed my rulings, it is clear from the above cases that the final ruling will be determined in the federal court system and not the state court one. If Ziv prevails on appeal, he would have a claim in excess of $0 in this estate and would be paid 8% of that claim through the Plan. The other 92% will be extinguished on the entry of discharge.*

*Should the Debtor default on the Plan and no discharge ever be entered, Ziv might be able to proceed in state court to determine his claim for unjust enrichment since this was only estimated in the bankruptcy court. All other claims went to final determination in the bankruptcy court and would be barred in the state court due to res judicata. As to the unjust enrichment claim, since he is stayed from proceeding in the state court due to the terms of the Plan, once the bankruptcy case would be dismissed he could go forward in the state court and would not be barred by the statute of limitations. Thus there is no justifiable reason to proceed in state court at this time since there can be no determination of liability or damages and nothing is collectible through a state court judgment unless the bankruptcy case is dismissed.*

*Therefore it is imperative that he seek to dismiss the Superior Court action without delay. The issue of possible monetary sanctions can wait for another day, but the bleeding of estate assets caused by the state court action must stop immediately.*

*Of course it is up to Judge Shaller to determine whether the state court matter should proceed and the effect of the attempt to add Debtor's husband as a defendant at this time. I cannot order the Superior Court to dismiss, but I do*

*have the power – if it is properly sought by the movant – to order Ziv and Herrera*

*to dismiss and to enforce that order through both monetary and non-monetary*

*sanctions if that order is violated.*

    *It might also be valuable - if Judge Shaller is agreeable – to hold a joint*

*status conference on this case so that the action in the Superior Court and in this*

*Court can be somewhat coordinated.  Since there is a hearing in the Superior*

*Court on 12/3, I suggest that the parties discuss with Judge Shaller whether he*

*would want a joint status conference and that they provide him with a copy of this*

*tentative ruling.  I have courtroom access on Tuesday mornings, so December 8*

*or December 15 would be ideal for such a status conference by phone.*

The matter was continued to January 11, 2016 for an evidentiary hearing.  Once

again, Herrera filed procedural objections to hearing the OSC (dkt. 675) and substantive

ones as to its content (dkt. 676).  The tentative ruling for January 11 summarizes the

status to that point:

    *On 12/3/15 the Debtor lodged a proposed order (dkt. 660).  This makes it*

*clear that what she is seeking is that Ziv and Herrera pay $28,342, that the Court*

*refer them to the U.S. Attorney for further action as to bankruptcy abuse and*

*fraud, that Herrera be referred to the State Bar for disciplinary proceedings, and*

*that Ziv and Herrera be ordered to dismiss with prejudice LASC cases*

*BC5998123 and BC571640.*

    *The notice of hearing, etc., was served on Herrera and on Ziv (at 4*

*addresses).*

    *On 12/28/15, Ziv filed an objection on procedural grounds to the issuance*

*of the OSC (dkt. 675).  (1) that it only gives 5 days to object, but LBR 9020-1(b)*

*requires 7 days to object; (2) the order must be served at least 21 days before the hearing and no order has been issued so it could not be served; (3) the prior objection to the proposed order being lodged and served with the Motion is not waived; (4) Ziv was not personally served.*

<u>*Court holding*</u>*: The Court does not find that these procedural objections have merit.  This is not a game of "gotcha."  The requirements are so that the opponents will have sufficient notice to be able to defend themselves.  This has been given to them.  The procedural objections are overruled.*

*Herrera, on his own behalf and as special counsel for Ziv, filed a substantive opposition (dkt. 676).*

*The Debtor had intentionally concealed from Ziv that she was in bankruptcy and thus Ziv never had an opportunity to participate in the Plan confirmation process.  Once he learned of all this and the content of the Plan and Confirmation order, on 11/27/15 Ziv filed an adversary proceeding seeking to revoke and set aside the Confirmation Order.  This concealment was egregious and may have been an abuse of the bankruptcy process by her and her attorney.  Since the Confirmation Order was obtained by fraud or misrepresentation, it can be challenged at any time and lack of due process in a chapter 11 proceeding is also grounds to set aside the Confirmation Order.*

*If Ziv prevails on his adversary proceeding, it would negate the discharge.  This filing of this motion was just a strategy to deal with the adversary proceeding.*

*The Debtor's motion for a discharge incorrectly states that the Ziv*

*adversary proceeding deals with Plan issues and will not affect the entry of a discharge.  This is incorrect since the first claim for relief seeks to dismiss the entire bankruptcy petition for fraud and bad faith.*

*This Court has never determined that the Ziv claims wholly lack merit, but merely estimated them at zero.*

*As to Claim 48, that is moot in that on 12/1/156 Ziv voluntarily dismissed the trespass action.*

*As to Claim 49, it is not identical to the Lis Pendens Action because the original complaint in that action was amended on 11/3/15.  Thus the original complaint is no longer the operative complaint.  Beyond that, Ziv has filed a motion to add additional causes of action and also Debtor's husband as a defendant.  The husband committed actionable torts against Ziv and those are separate from any claims against the Debtor.  In fact, there was a separate action against the husband that predates the proceedings in this case.*

*Ziv is also seeking reconsideration of the superior court's order expunging the lis pendens based on new and additional facts. This is largely based on issues being raised in the second amended complaint, which Ziv wishes to file.*

*There was never a stay of the state court lis pendens action.  Ziv argued to the superior court that there was a stay that would have prevented the demurrer and motion to expunge the lis pendens from going forward.  At that time (6/4/15) the stay was discussed and neither counsel nor the superior court judge were absolutely sure whether it existed.*

*There was no additional notice of stay or motions seeking relief from it. Thus, there was no stay.*

> *Debtor's authorities are off point.  The <u>Wilshire</u> case is off point. Here Ziv never attempted to recharacterize the events of the case.  The Debtor herself is arguing that the complaint filed in the state court is the claim filed by Ziv in the bankruptcy.  Further, the state court action predated the proof of claim.  There has been no discovery since the filing of the original complaint except by an independent investigation by Ziv, which revealed no facts as to the Debtor and her husband.*

*[Proposed ruling:]*

*This is an evidentiary hearing and there is no tentative ruling at this time.*

At that point the parties and the Court focused on whether the prior sanctions were paid and also on Herrera's lack of bankruptcy experience.  The matter was continued to February 9, 2016 as a holding date for information from both sides.  This was provided and thereafter the Court was able to resolve the issue as to the payment of the prior sanctions order – most, but not all of which was satisfied through executions by the Sheriff and not through any voluntary payments by Ziv.  It also appeared that Herrera was in contact with competent bankruptcy counsel.

Meanwhile, the Court began preparing the substantive portion of the motion.  The Court created a timeline of events and on February 2, 2106 it was sent to the parties, who were instructed to review it and provide any corrections, additions, or subtractions that they believed to be required.  Counsel for Vodenos was to use Red, Counsel for Ziv was to use Green (10-25103, dkt. 700).  The Court retained the right to create a final

timeline. The parties complied and Counsel for Vodenos added a reply column in Blue
(10-25103, dkt. 713).

After receiving and reviewing this, at the March 1, 2016 hearing the Court
requested additional information, some of which had to be provided later.  This request
was complied with.  Based on this information, the Court has created a final timeline,
which is entered concurrently herewith and portions of which are excerpted below.

The critical issue is whether the actions of Herrera and Ziv crossed the line from
zealous to abusive advocacy.  The key issues are as follows:

(1) Did Ziv and Herrera wrongfully fail to dismiss the trespass suit - LASC
BC571640 - after the ruling on claim #48?

(2) Did Ziv and Herrera wrongfully fail to dismiss the quiet title suit - LASC
BC559813 - and continue to pursue the ownership claim once the bankruptcy
court ruled on claim #49?

(3) Did Ziv and Herrera wrongfully fail to remove the lis pendens after the ruling
on claim #49, particularly given the prior and subsequent rulings in the
Superior Court?

(4) Did Ziv and Herrera act in a contemptuous fashion as to the above or as to
any other matters?

## LEGAL BASIS FOR SANCTIONS AGAINST HERRERA AND ZIV

As discussed above, Vodenos relies on *In re Wilshire Courtyard,* 437 B.R. 380
(Bankr. C.D. Cal. 2010),[6] in which a court, using its inherent powers under §105, issued

---

[6] The Court notes that there is subsequent appellate history that contains some negative analysis in
connection with *Wilshire Courtyard*.  However, for purposes of this Memorandum, the negative analysis
concerning a bankruptcy court's subject matter jurisdiction is not at issue in the instant case.

an order to show cause why FTB should not be held in contempt for collaterally attacking and refusing to comply with the plan confirmation order.  Other than citing to *Wilshire Courtyard* in her Motion, Vodenos does not provide other authority for sanctions against Herrera and Ziv. Thus, the initial issue is what is the legal basis for this court to award sanctions against Ziv and Herrera?

28 U.S.C. §1927 provides for sanctions against an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously," but under the precedential authority of the Ninth Circuit Court of Appeals, this Court does not have the authority to impose sanctions under §1927,.  *See Miller v. Cardinale (In re DeVille),* 361 F.3d 539 (9th Cir. 2004); *In re Perroton*, 958 F.2d 889, 896 (9th Cir. 1992); and *Determan v. Sandoval (In re Sandoval),* 186 B.R. 490, 495-6 (9th Cir. BAP, 1995).

Fed. R. Bankr. P. 9011 provides for sanctions against an attorney who files papers in this court without support or for an improper purpose, but the actions at issue were taken in state court, not in this court, and Vodenos seeks sanctions against both the client and the attorney. This leaves only this court's inherent power to award sanctions.

In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 42-47 (1991), the court held that Article III courts have an "inherent authority" to sanction "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so.  Furthermore, the Ninth Circuit has held that bankruptcy courts, like district courts, also possess that inherent power.  *In re Dyer,* 322 F.3d 1178, 1197 (9th Cir. 2003) (citing *Caldwell v. United Capital Corp.(In re Rainbow Magazine, Inc.),* 77 F.3d 278, 284 (9th Cir. 1996)). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics.  *Id.; Fink v. Gomez,* 239

1  F.3d 989, 992-993 (9th Cir. 2001).

2

3  ### REQUIREMENT OF BAD FAITH OR WILLFUL MISCONDUCT AS TO HERRERA

4  ### AND ZIV

5

6          Before the court may impose sanctions under its inherent sanctioning authority,

7  the court must make an explicit finding of bad faith or willful misconduct.  *Id.*  Bad faith

8  or willful misconduct consists of something more egregious than mere negligence or

9  recklessness.  *Id.*  In *Price v. Lehtinen (In re Lehtinen),* 564 F.3d 1052 (1061), the court

10 did not explicitly state that Price's conduct was performed in bad faith or was willful, but

11 it impliedly did so by finding that his conduct was outrageously improper, unprofessional

12 and unethical under any reading of California's ethical standards for attorneys.[7]

13

14         In reviewing sanctions under the court's inherent power, the cases have

15 generally focused on bad faith, for which the Ninth Circuit requires some finding of

16 improper purpose.  *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001) contains a summary of

17 Ninth Circuit holdings showing that mere inadvertence is not sufficient for sanctions and

18 neither is lack of intent.  Recklessness is subject to sanctions only if the conduct is

19 tantamount to bad faith; it requires something more than mere recklessness –

20 something such as an improper purpose.

21

22         The term willful misconduct does not require an improper purpose.  While the

23 Court has not found a clear definition in the context of this motion, the Ninth Circuit has

24 defined it when applied under the Warsaw Convention for suits against international air

25 carriers:

26

27         The Ninth Circuit has defined "willful misconduct", for purposes of the Warsaw

28

---

[7] The actions by the attorney in *Lehtinen* were truly outrageous and thus this case is being used only to
demonstrate the type of notice and findings that are required.

Convention, as "'the intentional performance of an act with knowledge that the … act will probably result in injury or damage or the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences.'" *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 723 (9th Cir. 1987), citing *Republic National Bank, supra*, 815 F.2d at 238-239 (quoting *Pekelis v. Transcontinental & Western Air*, 187 F.2d 122, 124 (2nd Cir. 1951), cert. denied, 341 U.S. 951, 71 S. Ct. 1020, 95 L. Ed. 1374 (1951)). That is, for the misconduct to be "wilful," [sic] there must be some knowledge that the damage would probably result. *Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d 532 (2nd Cir. 1965), cert. denied, 382 U.S. 983, 86 S. Ct. 559, 15 L. Ed. 2d 472 (1966).

*Tokio Marine & Fire Ins. Co. v. United Air Lines*, 933 F. Supp. 1527, 1534 (C.D. Cal. 1996)

11 USC §523(a)(6) uses the term "willful injury."  The term "willful" requires "a deliberate act with knowledge that the act is substantially certain to cause injury." *Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1208 (9th Cir. 2001). The Court "may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Ormsby v. First Am. Title Co. (In re Ormsby),* 591 F.3d 1199, 1206 (9th Cir. Cal. 2010), citing *Carillo v. Su (in Re Su),* 290 F.3d 1140, 1146 (9th Cir. 2002).

The Court finds that the Warsaw Convention definition is adequate and is consistent with that used in the bankruptcy code, with which Herrera should be familiar. Thus, to qualify as willful misconduct, the Court must find that Herrera and Ziv intentionally acted while knowing that their action(s) would probably result in damage to Vodenos.  It does not require an intent to harm Vodenos, but the knowledge that harm would probably result.


## DOES THE CONDUCT OF HERRERA AND ZIV AMOUNT TO BAD FAITH OR WILLFUL MISCONDUCT?

1

2       This motion focuses on two actions in the Superior Court: (1) matters concerning

3 the quiet title suit - namely the failure to dismiss that lawsuit and to continue to

4 prosecute it and the failure to remove the lis pendens and (2) matters concerning the

5 trespass suit - namely the failure to immediately dismiss that lawsuit.  Although the

6 written motion is limited to these areas, since then it has been supplemented through

7 oral argument and other papers and Ziv and Herrera are well aware of the additional

8 issues, the most prominent being seeking to add Vogel to the quiet title suit.  The Court

9 will deal with those, too.

10

11

12

13 **Concerning the Quiet Title Suit**

14       The quiet title suit is completely dependent on Ziv's claim that in August 2009 he

15 and Vodenos entered into an oral joint venture agreement which allegedly provided that

16 Vodenos would lease the property to Ziv for a year and use the lease payments to keep

17 the first priority lien current, that Vodenos would file bankruptcy so as to wipe out the

18 second and third priority liens on the property, and that Ziv would ultimately buy the

19 property from Vodenos for $3.2 million (enabling Vodenos to make a profit of $200,000).

20 Ziv asserts that he spent $400,000 improving the property in reliance on this agreement,

21 but that Vodenos breached the joint venture agreement by refusing to sell the property

22 to Ziv.[8]  Both the Superior Court and the bankruptcy court ruled that such an

23 agreement, if it existed, is barred by the statute of frauds and cannot be prosecuted.

24 (Tentative Ruling in 10-25103, dkt. 542 @ 19:23-20:4; Order of Dismissal entered July

25 20, 2015 in BC559813 @ 2-6).  This Court additionally ruled that Ziv's allegations at

26

27

28

---

[8] The contentions of Ziv are laid out in his verified complaint filed in BC559813.

most showed preliminary negotiations and not the existence of a valid agreement

between the parties (dkt. 542 at 19:17-21).  The Superior Court also based its demurrer

on judicial estoppel (Order of Dismissal @ 6-7).[9]  However only the Superior Court has

the authority to order the expungement of the lis pendens since it was filed based on the

quiet title suit in the Superior Court.

The timeline only as to the lien and asserted joint venture is as follows:

| 10/3/14 | Ziv files quiet title complaint in the Superior Court | BC559813 |
|---------|-------------------------------------------------------|----------|
| 10/9/14 | Ziv records a notice of lis pendens | BC559813 |
| 10/21/14 | Vodenos removes quiet title case to bankruptcy court | 14-ap-1183; BC559813 |
| 11/5/14 | Vodenos files a notice of non-opposition to the remand of the quiet title case to the Superior Court | 14-ap-1183, dkt. 10 |
| 11/10/14 | Quiet title action remanded to the Superior Court | 14-ap-1183, dkt. 13; BC559813 |
| 5/12/15 | Hearing on motion to disallow claim #47, #48, #49.  Bankruptcy court deems claim #47 to be amended by claim #49 and grants summary judgment on all parts of claims #47/49 except as to unjust enrichment. | 10-25103, dkt. 542 |
| 5/27/15 | Ziv files motion to reconsider the grant of summary judgment on claims #47/49 | 10-25103, dkt. 547/9\8 |
| 6/4/15 | Superior Court sustains demurrer and grants motion to expunge lis pendens on ground that no opposition was filed | BC559813 |
| 7/2/15 | Bankruptcy Court enters order disallowing claim #47 as amended by claim #49 except as to unjust enrichment | 10-25103, dkt. 575 |
| 7/20/15 | Superior Court dismisses the quiet title complaint on demurrer without leave to | BC559813 |

[9] Copies of documents from the superior court actions have been filed in the bankruptcy court.  Their specific locations are noted in the timeline filed concurrently herewith.

| | | |
|---|---|---|
| | amend | |
| 7/20/15 | Superior Court grants order expunging the lis pendens | BC559813 |
| 7/27/15 | Ziv files and serves notice of motion to vacate the order sustaining dismissal and expunging lis pendens on ground of attorney excusable neglect and mistake | BC559813 |
| 8/10/15 | Bankruptcy Court enters an order (i) denying Ziv motion for reconsideration of the tentative ruling entered 5/13/15 and (ii) sustaining the disallowance of proofs of claim #47 and #49 by order entered 7/2/15 | 10-25103, dkt. 592 |
| 9/18/15 | Superior Court grants motion to rehear the quiet title demurrer based on attorney negligence | BC559813 |
| 10/14/15 | Superior Court sustains the demurrer with leave to amend and orders expungement of the lis pendens; orders damages and sanctions against Ziv of $9,130 | BC559813 |
| 11/2/15 | Bankruptcy Court estimates the unjust enrichment claim at $0 | 10-25103, dkt. 634 |
| 11/3/15 | Ziv files First Amended Complaint in the Superior Court with the same 7 causes of action, but adds Jason Vogel, Debtor's husband, as a party | BC559813 |
| 11/3/15 | Vodenos files this motion for an OSC re: contempt | 10-25103, dkt. 636 |
| 11/6/15 | Ziv files appeal of order estimating claim #47/49 at $0.  (The earlier summary judgment on the remainder of claim #49 had not been appealed and was not included in this appeal.) | 10-25103, dkt. 645; BAP CC15-1382 |
| 11/9/15 | Ziv filed motion for leave to file a second amended complaint in the quiet title action. Proposed second amended complaint includes the same causes of action as the original complaint (and claim 47/49) and adds additional causes of action as to Vogel (Debtor's husband) for fraud and intentional deceit, intentional misrepresentation, | BC559813 |

| | | |
|---|---|---|
| | negligent misrepresentation, constructive fraud, conspiracy to defraud, and promissory estoppel | |
| 11/12/15 | Ziv files motion for reconsideration of order expunging lis pendens | BC559813 |
| 12/30/15 | Vogel (Vodenos' husband and a newly-named defendant) removes Superior Court quiet title action to bankruptcy court | 15-ap-1263; BC559813 |

The effect of the final ruling in the bankruptcy court as to claim #47 as amended by claim #49 is entitled to claims preclusion status in a state court matter if it meets the requirements of state law for collateral estoppel. *Roos v. Red*, 130 Cal.App.4[th] 870 (Ct. of App. 2d App. Dist. 2005); *Martin v. Martin*, 2 Cal.3d 752, 758 (1970).[10] Under California law, issue preclusion can be applied when: (1) the issue decided in the prior proceeding is identical to the issue sought to be relitigated in the subsequent proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) a final judgment on the merits was issued in the prior proceeding; and (5) the party against whom issue preclusion is sought was a party to the prior proceeding. *Lucido v. Superior Court*, 51 Cal. 3d 335, 341, *cert. denied*, 500 U.S. 920 (1991).)

On July 2, 2015, this Court entered its order granting summary judgment to Vodenos on six of the seven causes of action set forth in the state court quiet title complaint. The seventh – for unjust enrichment – was continued for an evidentiary hearing. Ziv filed a motion to reconsider and, on August 10, 2015, the Court entered its order denying Ziv's motion for reconsideration and sustaining this court's summary

---

[10] The rules concerning res judicata (also known as claims preclusion) and collateral estoppel (also known as issue preclusion) are largely the same. In this case it makes no difference which term is applied and thus they are used somewhat interchangeably.

judgment disallowance of six of the seven claims in claim #49 (except for the unjust enrichment claim).

Nonetheless Ziv's litigation of the quiet title suit continued unabated in the Superior Court. On August 25, 2015, Herrera served Ziv's motion on Katofsky seeking to vacate the order sustaining demurrer and expunging the lis pendens and he filed a conformed copy with the Superior Court. Having succeeded in convincing the Superior Court to change its order as to the demurrer so that he had leave to amend, on November 3, 2015 Ziv filed a first amended complaint that contains the same seven causes of action as the original complaint – including the six claims that this Court had already ruled upon in granting summary judgment on claim #49.  On November 9, 2015, Ziv filed a motion for leave to file a second amended complaint that again contains these same causes of action that are virtually identical to the original six or are otherwise based on the joint venture agreement that this Court has already ruled does not exist or is unenforceable. On November 12, 2015, Ziv filed a motion for reconsideration of the Superior Court's order expunging Ziv's lis pendens on the Property.

(It should be noted that the Superior Court had entered orders actually expunging the lis pendens on July 20, 2015 and again on October 14, 2015 (after the rehearing based on Ziv's motion to vacate).  The Superior Court's repeated decisions to expunge the lis pendens were based on Ziv's failure to carry his burden of proof on the motion:

> As the claimant, (i.e., the party asserting the real property claim who recorded the lis pendens), it is the Plaintiff who has the burden of proof on the motion, namely to "establish[] by a preponderance of the evidence the probable validity" of his claim to the real property.  See CCP § 405.32.  "Probable validity" means "it is more likely than not that the claimant will obtain a judgment against the defendant on the claim."  CCP § 405.3.

> Here the Plaintiff has not upheld his burden as he has not filed an opposition to this motion nor has he established, by the preponderance of the evidence, the probable validity of his claim. . . ."

July 30, 2015 Order Awarding Attorney's Fees and Granting Motion Expunging Pendency of Action (Lis Pendens) (copy filed in 16-ap-1028, dkt. 8, ex. 15 at 2:24 – 3:6).

> Unlike most other motions, the burden of proof is on the party opposing the motion to expunge. The lis pendens claimant (plaintiff) bears the burden of establishing the existence of a "real property claim" and that it is "probably valid." Plaintiff thus has the burden of producing sufficient evidence to support a finding that plaintiff will "probably" win at trial." . . .
> Plaintiff has clearly not met his burden in spite of the recently filed opposition to the motion.

October 14, 2015 minute order sustaining demurrer and granting motion to expunge the lis pendens (copy filed in 10-bk-25103, dkt. 715, p. 37 at 14-15 of the minute order).)

While Vodenos assumes that the bankruptcy court order of July 2, 2015 became final shortly thereafter. This was not the case:

Claim #49 has seven parts to it. Six concern the alleged oral agreement to form a joint venture and/or sell the real property to Ziv. The seventh is for unjust enrichment in which Ziv claims that he had spent substantial money improving the property prior to his eviction. On May 12, 2015 the Court granted summary judgment on the first six issues and the order on that was entered on July 2, 2015 (10-bk-25103, dkt. 575) A motion to reconsider was denied (dkt. 592) and the only remaining portion of the claim – for unjust enrichment – was later estimated at $0.

Although the order of July 2, 2015 was clearly severable and may have been ready for appeal, the Court did not specifically certify it as such. Under Fed. R. Civ. P. 54, (made applicable to bankruptcy cases by Fed.R.Bank. P 7054), the July 2, 2015 order was never certified as a final order and therefore the judgment disallowing the first six causes of action did not become final until the claims estimation order was entered. On November 2, 2015 all portions of the objection to claim 49 were resolved and ready

for appeal. (dkt. 635)  However, Ziv limited his appeal to the unjust enrichment claim

estimation. (dkt. 645).

On April 8, 2015, Ziv filed his opening brief in his appeal to the Bankruptcy

Appellate Panel (BAP CC15-1382, dkt. 24) in which he never mentions the summary

judgment or the quiet title issues.  In fact, he only refers to the November 2, 2015 order:

> It was during the leasehold term that Vodenos entered into an agreement
> with Ziv to sell him the Property.  Pursuant to this agreement, Ziv invested
> substantial sums for improvements into the Property.  It is these sums and the
> resulting claim for unjust enrichment, included within Ziv's Claim No. 49 (Ex. B,
> P. 25-36) (the "Claim"), which is the subject of this appeal, subsequent to the trial
> court's (Hon. Geraldine Mund) entry of an Order of November 2, 2015 assigning
> this claim a zero value, although there was considerable, substantial evidence of
> a great deal of expenditures by Ziv (AR, Ex. L1-L10). Id., p. 2.
>
> After disallowing the bulk of Ziv's claims, the trial court then denied
> Vodenos' Motion to disallow the Unjust Enrichment portion of the Claim, and
> Vodenos quickly moved to estimate that at zero.  In this appeal, Ziv contends that
> the trial court improperly valued the unjust enrichment Claim at $0, and
> disregarded substantial evidence of the loss which consisted of hundreds of
> financial documents. (AR, Ex. L1-L10) Id., p. 3.

Fed. R. App. P. 3(c)(1)(B) requires that a notice of appeal must specify the

"judgment, order, or part thereof being appealed."  When there is a mistake in

designation, the appellate court will allow the appeal to go forward if the intent of the

appellant to include other matters can be fairly inferred and the appellee is not

prejudiced by the mistake.  The Ninth Circuit Court of Appeals has ruled that "[i]n

determining whether 'intent' and 'prejudice' are present, we apply a two-part test: first,

whether the affected party had notice of the issue on appeal; and second, whether the

affected party had an opportunity to fully brief the issue."  *Ahlmeyer v. Nev. Sys. Of

Higher Educ.*, 555 F.3d 1051, 1054 (9th Cir. 2009), quoting *Lynn v. Sheet Metal

Workers' Int'l Ass'n*, 804 F.2d 1472, 1481 (9th Cir. 1986).

In *Ahlmeyer*, the circuit found that the notice of appeal met both requirements in

that it stated precisely the issue presented on the appeal and the appellee had the

opportunity to brief the issue and actually did so.  Although it is possible that Ziv may try

to file a new brief raising the quiet title issues, it is highly unlikely (virtually impossible)

that the BAP (and perhaps later the Ninth Circuit) would find that he met either of these

requirements.  The quiet title issues are not mentioned in the notice of appeal or in the

opening brief.

Thus, for purposes of the motions before this court, the summary judgment as to

the first six causes of action in the quiet title suit, as included in claim #49, became final

not later than November 17, 2015.  (As to the quiet title suit's cause of action for unjust

enrichment, it is debatable whether res judicata weight can be given to this court's

estimation of the unjust enrichment claim.  Because that order is on appeal and not

final, no further discussion of the effect of the November 2, 2015 order is needed.)

Once there was a final order in the bankruptcy court determining that Ziv had no

interest in the real property, it was incumbent on Ziv to withdraw his motion to

reconsider the expunging of the lis pendens.

But rather than doing so, on November 12, 2015 Ziv filed a motion for

reconsideration of the state court's October 14, 2015 order to expunge.  As set forth

more fully in this Court's ruling on this motion for reconsideration, which is being heard

in the removed quiet title action (16-ap-1028), the motion was fatally flawed in a number

of respects.  First, Ziv's motion for reconsideration once again failed to meet the

requisite burden of proof; it did not introduce *any* evidence establishing the probable

validity of Ziv's claims.  Second, Ziv and his attorney must have known that Ziv had not

appealed the bankruptcy court summary judgment order and thus it would soon be final.

Once this order became final, res judicata rendered Ziv's basis for the lis pendens

invalid. The motion for reconsideration does not attempt to address the res judicata

effect of the bankruptcy court's granting of summary judgment.  Finally, the motion quite clearly failed to meet the requirements of a motion for reconsideration under Cal. Code Civ. Proc. §1008(a), most notably by being filed 18 days after §1008(a)'s ten-day deadline for motions to reconsider.

In the motion for contempt and elsewhere, Katofsky has asserted that Judge Shaller ordered Ziv to remove the lis pendens.  I find no such order.  Judge Shaller's orders are self-executing and, once recorded, will expunge the lis pendens.  Vodenos has as much ability to record these orders as does Ziv.

However, because of Ziv's July 27, 2015 motion to vacate the order of the Superior Court and his later motion to reconsider, which was filed on November 12, 2015, it does not appear that there is a final order to expunge the lis pendens. Ziv's improper action is that the motion to reconsider the order expunging the lis pendens was not withdrawn even after the judgment on Claim #49 became final.

The Court was poised to demand that (i) the motion to reconsider immediately and to record any document required remove the lis pendens as a cloud on title and (ii) any second amended complaint not include the quiet title claims or name Vodenos in any claims other than unjust enrichment. Failure to comply with these things would have resulted in a finding of willful misconduct and bad faith as to both Ziv and Herrera.

However, Ziv and Vodenos have now stipulated to the dismissal of all causes of action against Vodenos in the Quiet Title Action, with the motion to reconsider taken off calendar.  In these circumstances, the Court cannot say Ziv and Herrera's conduct amounts to bad faith or willful misconduct.

1

2

## Concerning the Trespass Suit

3

4          Ziv had filed another lawsuit in the Superior Court and claim #48 is based on that

5  lawsuit.  This concerned his assertion that he was evicted prior to the date set forth in

6  the order of the Superior Court.  The timeline concerning case BC57140 and claim #48

7  is as follows:

8

| 2/6/15 | Ziv files complaint for trespass in the Superior Court.  This contains causes of action for trespass to land, invasion of privacy, breach of implied covenant of quiet enjoyment, illegal lockout, violation of business and professions code section 17200, and intentional infliction of emotional distress | BC571640 |
|---|---|---|
| 2/27/15 | Ziv files claim #48 for $300,000 and attaches the complaint that he had filed in BC571640 | Claim #48 |
| 3/11/15 | Vodenos files motion to disallow claims #48 and #49 | 10-25103, dkt 512 |
| 5/12/15 | Hearing on motion to disallow claims.  Court determines that claim #48 was timely filed | 10-25103, dkt. 542 |
| 5/29/15 | Vodenos files motion to disallow or estimate claim #48 | 10-25103, dkt. 552 |
| 7/2/15 | Bankruptcy court enters order that claim #48 was timely filed | 10-25103, dkt. 576 |
| 10/6/15 | Claim #48 estimated at $0 | 10-25103, dkt. 619 |
| 10/16/15 | Vodenos files motion to dismiss the state court trespass complaint | BC571640 |
| 10/20/15 | Last day to file a notice of appeal of the summary judgment/claims estimate.  No appeal is filed. | 10-25103 |
| 11/3/15 | Vodenos files motion for contempt – in part due to Ziv proceeding in state court on the trespass suit | 10-25103, dkt. 636 |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| 11/18/15 | Ziv files opposition to motion to dismiss the trespass complaint on the grounds that the bankruptcy court had not granted summary judgment on all claims in claim #48, but had estimated the remaining claims at $0 and had not ruled on punitive damages. Furthermore, the order was not final for res judicata purposes. | BC571640 |
|---|---|---|
| 12/1/15 | Ziv dismisses the Superior Court trespass suit without prejudice two days before the hearing on the motion to dismiss.  The court's tentative ruling was to dismiss. | BC571640 |
| 12/15/15 | Vodenos files a memorandum of costs in the trespass suit | BC571640 |

On September 29, 2015, the Court heard the Debtor's motion to disallow claim #48 or, alternatively, to estimate it at $0.  After an analysis of the claims the Court ruled as follows:

- trespass to land – deny summary judgment, estimate damages at $0

- invasion of privacy – deny summary judgment, estimate damages at $0

- breach of implied covenant of quiet enjoyment – grant Vodenos summary judgment

- illegal lockout – grant Vodenos summary judgment

- violation of Business and Professions Code Section 17200 – grant Vodenos summary judgment

- intentional infliction of emotional distress – grant Vodenos summary judgment.

   (dkt. #618)

Based on that ruling and while the appeal period had not yet ended, on October 16, 2015, Vodenos filed a motion in the state court to dismiss the trespass suit.  Even before Ziv filed his response, on November 3, 2015, Vodenos filed this motion for an

OSC re: contempt.

On December 1, 2015, just a few days before the scheduled hearing on the motion to dismiss, Ziv dismissed the trespass suit without prejudice.  It should be noted that Ziv did not file an appeal of the ruling on claim #48 and the time to file such an appeal expired on October 20, 2016, which was a few days after Vodenos filed her motion to dismiss the trespass case.[11]

Ziv's opposition to the motion to dismiss the trespass complaint was on the grounds that the bankruptcy court had not granted summary judgment on all claims in claim #48, but had estimated the remaining claims at $0 and had not ruled on punitive damages.  This was not frivolous.  The law is unclear as to the preclusive effect of an order estimating a claim.

There is no doubt that a final order granting summary judgment acts as collateral estoppel for the issues for which judgment is entered.  However, claims estimation is a creature of the bankruptcy law and is allowed when needed to fulfill the goals of bankruptcy.  The Court noted in its ruling on the motion for summary judgment or claims estimation that here the Debtor has a confirmed Plan and that it was appropriate to estimate this unliquidated claim. (10-bk-25103, dkt. 618, 619)  However, there is no consensus and certainly no binding authority that a claims estimate has preclusive effect in other contexts and forums:

The bankruptcy court's ability to estimate claims derives from either Bankruptcy Code § 502(c) or Fed. R. Bankr.P. 3018. Bankruptcy Code § 502(c) mandates the estimation of a contingent or unliquidated claim "for purposes of *allowance* ... [if] the fixing or liquidation ... would unduly delay the administration of the estate." (Emphasis

---

[11] As to the appeal period remaining open, see below.

-30-

1  added). . . .

2        Whether a claim estimation determination under § 502(c) has preclusive effect is

3  a matter of disagreement among the courts. As the court in *In re A.P.I., Inc.,* 331 B.R.

4
   828, 846 (Bankr. D. Minn.2005), noted:
5

6              Some courts hold that the estimation of a claim under § 502(c)(1)
           has binding effect *per se* only for the administration of claims and assets
7          in a bankruptcy case, and does not give rise to a fixed and liquidated claim
           cognizable in any other forum. E.g., *In re Eagle Bus Mfg., Inc.,* 158 B.R.
8          421, 437–438 (S.D.Tex.1993); *In re Teigen,* 228 B.R. 720, 722 (Bankr .
           D.S.D.1998); *Matter of Interco Inc.,* 137 B.R. 993, 999
9          (Bankr.E.D.Mo.1992). Others have envisioned an estimation under §
10         502(c)(1) as having preclusive effect, but have recognized the bankruptcy
           court's power to limit or deny that effect in deference to another forum, at
11         the instance of party or parties, or not. *In re Indian Motocycle Co., Inc.,*
           261 B.R. 800, 808 (1st Cir. BAP2001); *In re Handy & Harman Refining
12         Group, Inc.,* 262 B.R. 211, 215–216 (Bankr.D.Conn.2001).

13  The Bankruptcy Appellate Panel for the First Circuit has opined:
           Ordinarily, an estimated claim may have the same preclusive effect as any
14         other order from a court of competent jurisdiction, raising the possibility
           that the bankruptcy court's order would invoke res judicata or collateral
15         estoppel on the issue of the amount of the taxes. *See* 4 Collier on
           Bankruptcy ¶ 502.04[3]. However, we also note that under some
16         circumstances an estimated claim may be limited by the court in
           deference to another court's jurisdiction over a matter. *See In re Bicoastal
17         Corp.,* 122 B.R. 771, 774–75 (Bankr.M.D.Fla.1990). *See also* 4 Collier on
           Bankruptcy at ¶ 502.04[3].
18
   *United States of America v. Sterling Consulting Corp. (In re Indian Motocycle
19  Co.),* 261 B.R. 800, 808 (B.A.P. 1st Cir.2001) (holding use of § 502(c) estimation
20  procedure governing prepetition claims for estimation of post-petition taxes was
   in error).
21

22  In re Loucheschi LLC, No. 11-42578- MSH, 2013 WL 6009947, at *11 (Bankr. D. Mass.

23  Nov. 13, 2013).

24
        Herrera and Ziv cannot be held in contempt for the short duration that they
25
   pursued the trespass suit, although if it had actively gone forward they may have been
26

27

28

required to abandon all causes of action except for trespass and invasion of privacy.[12]

Beyond that, since they dismissed the state court trespass suit before any ruling by the Superior Court on the motion to dismiss, this does not meet the requirement of either bad faith or willful misconduct.

### Concerning Suits Against Vogel and Other Matters

Ziv has brought three lawsuits against Jason Vogel, Debtor's husband, and is planning a fourth.  The first one, largely for defamation, is still pending in the Superior Court, with the SLAPP motion being briefed in the court of appeal.

The second one is this removed case in which Ziv has amended the Vodenos quiet title suit to add Vogel and also seeks to now add new causes of action, while maintaining the old ones that have nothing to do with Vogel – including the assertion of quiet title

The third was also for defamation and was filed on April 28, 2016 with Ziv's company (Pacific Holdings Partnership) as the plaintiff.  Although this Court has not had the opportunity to review that complaint, based on what was presented in count at the hearing on May 17, 2016, it appears that Ziv is asserting that Vogel has continued to defame him and his company.

And there is apparently a fourth suit that will be filed in the Superior Court against Vogel seeking a restraining order.  This may be connected to the actions complained of in the two defamation suits.

None of these are pending in this court and are more appropriately to be dealt with in the Superior Court.  Although Vodenos asserts that Ziv is being abusive – and

---

[12] See discussion on the quiet title suit as to the effect of a partial judgment on the time to appeal and a claims estimation on collateral estoppel and res judicata.

that may be the case – the appropriate forum is the Superior Court, which is the proper

jurisdiction to ascertain whether sanctions are warranted under state law.

### Summary

Although Ziv has largely pursued a "scorched earth" policy in his litigation(s)

against Vodenos, he has generally done so in conformance with the procedural rules,

so it is difficult for this Court to make the requisite finding of bad faith or willful

misconduct.

The Court had been prepared to closely monitor Ziv and Herrera's behavior

going forward in this case and related adversary proceedings, with their failure to

comply with orders of this Court resulting in a finding that they are in contempt.

However, Ziv's stipulation with the Debtor dismissing all causes of action against the

Debtor with prejudice and agreeing not to bring any further causes of action regarding

the Property, and the Court's order approving this stipulation and remanding the Quiet

Title Action to Superior Court, appears to remove all of these issues from this Court.

Thus, the Court concludes that the bad faith or willful misconduct required for the

the imposition of sanctions against Ziv or Herrera has not been shown. The Debtor's

motion for an order to show cause re: sanctions will be denied.

###

Date: July 12, 2016

_____
Geraldine Mund
United States Bankruptcy Judge